The ESTATE OF Martin H. MARK, Audrey L. Mark, Administrator Audrey L. Mark, and Michael L. Mark, Appellants,

v.

H.H. SMITH COMPANY and Jeffrey Mark, Appellees.

No. 49S02–8912–CV–895.

Supreme Court of Indiana.

Dec. 7, 1989.

Donn H. Wray, Stewart & Irwin, Leo L. Kriner, Indianapolis, for appellants.

Leonard Opperman, A. Demarest Allen, III, Bose McKinney & Evans, Indianapolis, for appellees.

1. See also *Beaver v. Vandall*, Ind., 547 N.E.2d

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Second District Court of Appeals. The Estate of Martin H. Mark (Estate) appealed the trial court's decision that Jeffrey Mark gained title by adverse possession to certain real estate and that the Estate had no title, ownership, or interest in the real estate. The Court of Appeals affirmed the judgment of the trial court.[1] 514 N.E.2d 351.

The facts show that in 1956, Martin Mark purchased real estate located at 325 North Illinois. During that same year, the H.H. Smith Company moved into the building at 325 North Illinois with Jeffrey Mark, Martin's brother, acting as its sole operating partner. This arrangement continued until Martin Mark's death in 1983. At the time of his death the title to the property was still in his name.

On October 24, 1983, Plaintiffs H.H. Smith Company and Jeffrey Mark filed their complaint to determine the Estate's interest in real estate and improvements to the property in question and, on January 30, 1984, moved to consolidate their claim, which was then pending in the Estate proceedings, with this cause of action. That motion was granted on February 1, 1984. Ultimately the cause was tried to the court and the trial court's decision was that Jeffrey Mark gained title to the real estate by adverse possession and that the Estate had no title, ownership, or interest in it. The Estate appealed the trial court's judgment to the Court of Appeals, claiming that the trial court failed to make findings of fact demonstrating the existence of all of the required elements for adverse possession.

The judgment, findings of fact and conclusions of law were entered by the trial court on January 8, 1986, as follows:

JUDGMENT, FINDINGS OF FACT,
AND CONCLUSIONS OF LAW

H.H. Smith Company and Jeffrey Mark timely filed a claim against the Estate of

802, handed down this date.

Martin H. Mark, who died intestate on the 6th day of June, 1983. The claim alleged ownership of certain real estate and damages for breach of contract. H.H. Smith Company and Jeffrey Mark also filed their amended complaint to determine interest in said real estate, to which the Defendants filed their counterclaim. The cause was heard upon the evidence submitted by the parties and trial concluded on August 14, 1985. At the conclusion of the evidence, the Court took under advisement its decision and the objection of the Defendants to the testimony of Plaintiff and Claimant Jeffrey Mark.

The Court having concluded that the testimony of Jeffrey Mark expands the Plaintiffs' cause of action and should have been excluded under the Dead–Man's Statute, now sustains Defendants' objection to the testimony and strikes that testimony from the record, including Plaintiffs' Exhibits Six and Seven, which were admitted as part of said testimony.

And the Court, having considered all of the evidence and being duly advised by post trial briefs, does now decide and determine as follows:

## FINDINGS OF FACT

1. That Jeffrey Mark and Martin H. Mark formed a partnership known as H.H. Smith Company; and filed a partnership certificate with the Recorder of Marion County on February 19, 1948; the purpose of said partnership was to sell barber and beauty shop equipment;

2. That, in 1956, Martin H. Mark, an attorney, purchased and took title to real estate located at 325 North Illinois Street, Indianapolis, Indiana, bearing the following legal description:

A strip of ground of the uniform width of 35 feet taken by parallel lines off the north side of Lot Number Nine (9) in Square 26 of the Donation Lands of the City of Indianapolis, County of Marion, State of Indiana;

3. That, at the time of Martin H. Mark's death on June 6, 1983, title to the disputed real estate remained in the name of Martin H. Mark;

4. That, from the time of the purchase of said real estate, all insurance on said building and all real estate taxes and depreciation on said building were taken as expenses and deductions on the partnership income tax return;

5. That the original inventory filed in this Estate on November 2, 1983, listed no real estate. But thereafter, on February 21, 1984, the Executrix of the Estate, being the widow of the decedent herein, filed a Partial Inventory, Number 2, in which the subject real estate was listed as an asset of decedent's Estate.

6. That Jeffrey Mark operated the business known as H.H. Smith Company as the sole operating partner.

7. That Martin H. Mark took no depreciation on his federal income tax returns for the business property from the date of its purchase until the date of his death, nor did said returns show any rent or income from said property;

8. That Jeffrey Mark significantly improved the property, including painting and remodeling the building when necessary;

9. That, at no time did Martin H. Mark receive income from the profits derived from the operation of H.H. Smith Company, nor did he participate in any manner in the operation of that business;

10. That, although the H.H. Smith Company filed partnership tax returns, the returns reflect no ownership interest of Martin H. Mark in the business. The partnership returns reflect one hundred per cent (100%) ownership of the H.H. Smith Company by Jeffrey Mark;

11. That Jeffrey Mark took possession of the building in 1956, and changed the locks at that time;

12. That Martin H. Mark never possessed a key to the building after the locks were changed, and thereby was denied access to the property;

13. That, Jeffrey Mark insured the property continuously since 1956;

14. That Jeffrey Mark paid all taxes assessed upon the property since 1970;

15. That Jeffrey Mark held the property and operated the H.H. Smith Company upon the premises openly since 1956;

16. That Jeffrey Mark regarded himself as the owner of the property; and

17. That Martin H. Mark never brought an action against Jeffrey Mark to eject him from the property.

### CONCLUSIONS OF LAW

1. The law is with the plaintiff Jeffrey Mark on Count II of his complaint.

2. The operation of the H.H. Smith Company since 1956, constitutes an actual, visible and notorious possession of the property.

3. Jeffrey Mark has satisfied all the requirements necessary to gain title to the subject property by adverse possession, and is now entitled to legal title to the property located at 325 North Illinois Street, Indianapolis, Indiana.

4. The law is against Defendants on their counterclaim.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that Plaintiff, Jeffrey Mark, is the owner of the following described real estate:

A strip of ground of the uniform width of 35 feet taken by parallel lines off the north side of Lot Number Nine (9) in square 26 of the Donation Lands of the City of Indianapolis, County of Marion, State of Indiana,

more commonly known as 325 North Illinois Street, Indianapolis, Indiana, and that the Estate of Martin H. Mark has no interest, title or ownership in the said real estate.

Cost vs. Defendants.

DATED this 8th day of January, 1986.

Victor S. Pfau, Judge /s/
Marion Superior Court
Probate Division

*Record* at 158–61. Where special findings are made by the trial court, they must be sufficient to disclose a valid basis for the legal result reached in the judgment. *Town of Rome City v. King* (1983), Ind. App., 450 N.E.2d 72, 77; *Sandoval v. Hamersley* (1981), Ind.App., 419 N.E.2d 813, 816. This Court held in *Miller v. Ortman* (1956), 235 Ind. 641, 136 N.E.2d 17, that the purpose of special findings is to provide the parties and reviewing court with the theory upon which the dispute was resolved. This Court must accept the findings made by the trial court if they are supported by evidence of probative value and may not add to the findings by way of presumption or inference. *Miller* further provided:

In considering the sufficiency of the findings of fact and conclusions of law to sustain the decision, we recognize the general rule (a) that this court must accept ultimate facts as stated by the trial court if there is evidence to sustain them, and (b) that where facts necessary to sustain the issues are not found by the trial court and the findings are silent as to such facts, they are regarded as not proved. Under such circumstances the law, in effect, implies negative findings as to such issues against the party having the burden of their proof.

*Id.* at 665, 136 N.E.2d at 31.

The Court of Appeals found that the trial court's findings 11, 12, and 16, were sufficient to support the trial court's legal conclusion that Jeffrey's possession was hostile and exclusive and affirmed the trial court.

It is our conclusion these three findings do not support the trial court's legal conclusion that Jeffrey's possession was hostile and exclusive. The findings of the trial court were contradictory to each other and in many respects were not supported by the evidence. In total, the trial court did not find all of the elements necessary to establish proof of adverse possession. For these reasons, the opinion of the Court of Appeals is vacated and the trial court is reversed.

█ It is well established in Indiana law that title to real estate may be defeated by adverse possession where the possession has been actual, visible, notorious, exclusive, under a claim of ownership, hostile to the true owner, and continuous for the statutory period. All of these elements must be proved. *McCarty v. Sheets* (1981), Ind., 423 N.E.2d 297, 298; *Emberry Com-*

*munity Church v. Bloomington District Missionary and Church Extension Society, Inc.*, (1985), Ind.App., 482 N.E.2d 288, 294; *Philbin v. Carr* (1920), 75 Ind.App. 560, 582, 129 N.E. 19, 27. In addition, the adverse claimant must pay real estate taxes on the property for the statutory period. *Poole v. Corwin* (1983), Ind.App., 447 N.E.2d 1150, 1152. Apparent in these cases and the many cited therein, going back for well over one hundred years, the principle has remained that record title is the highest evidence of ownership and is not easily defeated. While such title may be defeated by adverse possession, mere possession is the lowest evidence of ownership. *McCarty*, 423 N.E.2d at 300; *Philbin*, 75 Ind.App. at 582, 129 N.E. at 27.

■■■ One cannot gain title by adverse possession of another's property by mere possession regardless of the length of time that possession might continue. Furthermore, the possession must be accompanied by a claim of ownership adverse to the true owner. It is not enough that the occupier feels or thinks he is the owner or even declares he is the owner. His claim of ownership must be based on some ground justifying that conclusion and it must be communicated to the true owner that the occupier makes such a claim that is adverse or hostile to his ownership. It is not enough to prove that *possession* was open and notorious. It must be proved that adverse possession, that is, possession with a claim of ownership exclusive of everyone including the true owner, is open and notorious to the extent that the true owner is, or should be, aware of it. *McCarty*, 423 N.E.2d at 301; *Philbin*, 75 Ind.App. at 586–87, 129 N.E. at 28. This was well expressed by the Court of Appeals in *Philbin:*

> The possession must be hostile. The land must be held in direct opposition to the holder of the legal title and all others, excepting only the government. This is the very essence of ownership; for one cannot say confidently, "this land is my own" unless he have such evidence of ownership as will enable the courts to protect him in the exercise of dominion

thereof as against all who may assail him. The object of this provision is to make the occupancy itself sufficient evidence of the adverse intent of the party holding it, in the absence of other evidence establishing its true nature.

*Philbin*, 75 Ind.App. at 586–87, 129 N.E. at 28.

In *Poole v. Corwin* (1983), Ind.App., 447 N.E.2d 1150, the Court of Appeals correctly stated that when hostile acts are so manifest and notorious that reasonable owners should have been aware of them, no further notice is required for purposes of an adverse possession claim. *Id.* at 1152. *Poole* further advances the well recognized principle that where entry upon land has been in admitted subordination to the title of another, the statutory period for adverse possession does not begin to run until the occupant clearly disclaims and disavows the title of the true owner. This disclaimer must be clear, unequivocal and open. *Id.* This principle would, of course, apply in the present case because all parties admit that the initial entry upon the property in question by Jeffrey Mark in 1956 was permissive.

■■■ The trial court found, in Finding 4, that from the time of purchase of the real estate, all insurance, real estate taxes and depreciation on the building were taken as expenses and deductions on the partnership income tax return. This is contradicted by Findings 13 and 14 which state that Jeffrey Mark insured the property continuously since 1956 and Jeffrey Mark paid all taxes assessed upon the property since 1970. Jeffrey Mark testified at trial that from 1956 to 1970 Martin H. Mark paid the real estate taxes and beginning in 1970 the partnership H.H. Smith paid these taxes and other expenses and took them as business deductions. Partnership returns demonstrated that this was true and there is no contradiction on these facts. The trial court's Finding 10 stated that the partnership tax returns reflected no ownership interest of Martin H. Mark in the business and the returns reflect 100% ownership of H.H. Smith by Jeffrey Mark. This is contrary to the evidence. The evidence was

that Jeffrey and Martin were shown as partners in H.H. Smith Company on the tax returns, there was no designation as to specific ownership other than that and the returns show 100% of the profits went to Jeffrey Mark.

Jeffrey Mark testified that his occupancy of the building was permissive in 1956. He stated he knew his brother owned the real estate and his occupancy was permissive and gave him no right to title. He admitted he did not feel he had any right to own the property until 1970 nor did he ever tell his brother he felt he had a right to the property. He attempted to introduce into evidence that from the time of occupancy, he was making payments to his brother to buy the building under an oral contract or agreement between them. He stated payments were made in cash without any witnesses present and with no receipts being exchanged. The Estate objected to this testimony on the basis of the Statute of Frauds, Ind.Code § 32-2-1-1, and the Dead Man's Statute, Ind.Code § 34-1-14-6. The trial court properly sustained this objection, citing only the Dead Man's Statute, and all testimony in that regard was excluded. The only change demonstrated by the evidence was that in 1970 the partnership H.H. Smith began paying the taxes, taking depreciation, and paying insurance on the building and began deducting them as business expenses. Those returns continued to show Martin and Jeffrey as partners in the H.H. Smith Company. Jeffrey Smith testified that at no time did he tell his brother Martin that he, Jeffrey, was the owner of the property, had a right to it, and was making claim to the title. The Court of Appeals held that the trial court's Findings 11 and 12 demonstrated evidence of adverse possession sufficient to affirm the trial court on that issue. Finding 11 states Jeffrey Mark took possession of the building in 1956 and changed the locks at that time, and Finding 12 states that Martin Mark never possessed a key to the building after the locks were changed and *thereby was denied access to the building. Record* at 160 (emphasis added). The court's conclusion was unwarranted. In the first place, as we have pointed out above, Jeffrey Mark testified he was not making any claim to adverse possession in 1956. In the second place, Jeffrey Mark testified that when he and the real estate agent went to the building there was a problem with the locks. He did not go into detail as to what that problem was. It could be inferred that the problem was with having keys for the existing locks or that all of them needed to be replaced. He stated the real estate agent admitted him with a key he had been given and then the real estate agent and Jeffrey Mark went to a locksmith about two blocks away and had the problem remedied. He stated this was the reason for changing the locks. He did not testify that he changed them to dispossess Martin Mark or deny him access to the property, nor did he indicate to Martin Mark that that was his intention and purpose. He testified that Martin Mark did not have a key to the property because he, Jeffrey, never gave him one. Clearly, from Jeffrey Mark's own testimony, and that was the only testimony on that issue, there is no evidence that the changing of locks demonstrated Jeffrey Mark's changing his permissive occupancy to that of adverse or hostile possession. *Maple v. Stevenson* (1890), 122 Ind. 368, 371, 23 N.E. 854, 855; *Buckley v. Taggart* (1878), 62 Ind. 236, 239; *Poole*, 447 N.E.2d at 1152; *Philbin*, 75 Ind.App. at 586–87, 129 N.E. at 28.

The remaining finding the Court of Appeals used to affirm the trial court was Finding 16 that Jeffrey Mark regarded himself as the owner of the property. There is a total lack of evidence supporting the conclusion that Jeffrey regarded himself as the owner of the property. There is no evidence demonstrating a basis for his claim of right or claim of ownership, nor is there any evidence that he communicated this, actually or constructively, or made a declaration to Martin that he was of this opinion. In fact, the evidence is to the contrary; he stated he never indicated to Martin that he, Jeffrey, considered himself the owner. Since the resolution of this issue is dispositive of this appeal, we see no need to go into additional issues raised by

petitioners-appellants, the defendants below.

The opinion of the Court of Appeals is vacated and the trial court is reversed with direction to enter judgment for the defendants.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.