## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2017, 9:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Jeremy K. Nix
Matheny, Hahn, Denman & Nix, LLP
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of R.N. (Minor Child), <br><br> and <br><br> R.S. (Mother) and A.N. (Father), <br> *Appellants-Respondents,* <br><br> v. <br><br> Indiana Department of Child Services, <br> *Appellee-Petitioner.* | January 30, 2017 <br><br> Court of Appeals Case No. 90A02-1606-JT-1459 <br><br> Appeal from the Wells Circuit Court <br><br> The Honorable Kenton W. Kiracofe, Judge <br><br> Trial Court Cause No. 90C01-1507-JT-41 |

**Mathias, Judge.**

[1] R.S. ("Mother") and A.N. ("Father") (collectively "the Parents") appeal the order of the Wells Circuit Court terminating their parental rights to their minor child, R.N. ("Daughter"). On appeal, the Parents claim that the evidence was insufficient to support the trial court's conclusions that (1) there was a reasonable probability that the conditions which resulted in Child's removal from their custody would not be remedied, and (2) that termination of the parent-child relationship was in the best interests of Daughter.

[2] We affirm.

## Facts and Procedural History

[3] Daughter was born to Mother and Father in January 2013. On March 29, 2014, the Indiana Department of Child Services ("DCS") received a report that Mother and Father had been using heroin and driving under the influence of heroin while Daughter and another child, Father's sister, were in the vehicle. The report also stated that Mother and Father were trading their food stamps for drugs. DCS personnel attempted to find Mother and Father to investigate this report but were unable to contact them after repeated attempts.

[4] On April 3, 2014, DCS went to an apartment in Decatur, Indiana, looking for Mother and Father. The person who answered the door denied that Mother and Father were at the apartment, but when DCS and law enforcement officers entered the apartment, they found Mother and Father. Mother and Father denied hiding from DCS and denied using drugs. They also submitted to oral swab drug tests. The police found alcohol, marijuana, and drug paraphernalia

at the apartment. The results from the oral swab drug tests came back on April 7, 2014, and showed that Mother tested positive for methadone and heroin and that Father tested positive for methadone. Accordingly, a DCS family case manager met with Mother and Father, who agreed to an informal adjustment and to work with DCS without the formal intervention of the courts. They also agreed to submit to further drug tests.

[5] On April 9, 2014, DCS filed an action with the trial court alleging that Daughter was a child in need of services ("CHINS") when the Parents again tested positive for drug use.[1] Daughter was removed from the Parents' care, and on April 10, 2014, the Parents admitted that Daughter needed services. After a subsequent dispositional hearing, the trial court ordered both Parents to participate in various services, which included home-based case management, supervised visitations with Daughter, substance abuse assessments and following any recommendations based on that assessment, and random drug testing. Mother was additionally ordered to obtain her high school diploma or GED. The Parents were further ordered to maintain weekly contact with DCS, accept announced and unannounced home visits by DCS personnel, and provide DCS with verification of income and paternity.

---

[1] Father tested positive for use of methamphetamine, hydromorphone, morphine, methadone, and heroin and also had trace amounts of amphetamine in his system. Mother tested positive for morphine and had trace amounts of heroin in her system.

[6]     At a six-month review hearing held on November 7, 2014, the trial court found that Father had not been participating in the ordered services. Some of this was attributable to Father's incarceration in June and July of that year following his arrest for driving while suspended. Father had been referred to group therapy for his substance abuse issues, but had yet to start it due to his incarceration. However, even when he was not incarcerated, Father frequently failed to participate in homebased services. Father was also unemployed and lacked stable housing. For her part, Mother had partially complied with the offered services but had missed several scheduled appointments with various service providers. Mother, too, was unemployed and lacked stable housing. She also admitted to taking pain medication for which she did not have a prescription, which was reflected in the results of three drugs screens that tested positive for low amounts of methadone, hydrocodone, and oxycodone.

[7]     The trial court held a permanency hearing on January 7, 2015. At the hearing, Daughter's guardian ad litem ("GAL") asked the court to change Daughter's permanency plan from reunification with Parents to termination of their parental rights. The trial court found that Mother had recently tested positive for methamphetamine use and had failed to attend her therapy sessions, resulting in the therapy being cancelled. Although she had made some effort in the weeks leading to the hearing, Mother was still unemployed and had no source of income. Father had been released on probation, but a petition to revoke his probation had already been filed. Although Father completed his substance abuse assessment, he did not attend his group therapy sessions. He,

too, was still unemployed and had no source of income. Still, the trial court denied the GAL's request and continued with the permanency plan of reunification.

[8] On May 28, 2015, the trial court held another permanency hearing, again finding that the Parents had not fully complied with services or cooperated with DCS. Daughter was placed with Mother's aunt, and the permanency plan remained reunification.

[9] After another permanency hearing held on September 8, 2015, the trial court changed the permanency plan from reunification with Parents to termination of their parental rights. The court found that daughter was doing well in her placement with Mother's aunt. The trial court noted that Mother had not been fully compliant with the ordered services, although she had been attending visitation regularly. However, her compliance with drug testing was sporadic, and she tested positive in July for methamphetamine, amphetamine, and THC.[2] Moreover, Mother's substance abuse counseling had been canceled because of her failure to attend. Father had visited Daughter only once between January and April of 2015. After April, he had again been incarcerated following the revocation of his probation. After being released from incarceration at the end of June 2015, Father attended four of five scheduled visitations with Daughter. However, his outpatient substance abuse treatment had been terminated due to

---

[2] THC is the abbreviated name for tetrahydrocannabinol, the main active chemical in marijuana.

noncompliance. He also had not submitted to all the required drug screens and had recently tested positive for THC.

[10] On July 27, 2015, DCS filed a petition to terminate Mother and Father's parental rights. A termination hearing was held on December 29, 2015. On April 28, 2016, the trial court terminated the Parents' parental rights to Daughter by issuing findings of fact and conclusions of law which provided in relevant part as follows:

> 2. [Daughter] has been removed from the care of [Mother] and [Father] for over 15 of the most recent 22 months. The child was detained by the Department of Child Services on April 9, 2014.
>
> 3. [Daughter] has not returned home on a trial home visit to neither [Mother] nor [Father] since April 9, 2014.
>
> 4. [Daughter] has been under a Dispositional Order from a hearing on April 22, 2014 with an order date of May 22, 2014.
>
> 5. [Mother] has demonstrated an inability to adequately meet the basic needs of her children for food, clothing, and shelter for one and a half years. She has been incarcerated for portions of the case, is presently on home detention for the crime of dealing in a lookalike substance, lives in her grandfather's house free of rent and obligation, and was close to obtaining unsupervised time with her daughter when she again tested positive for substances. While she was able to find employment during some portions of the case, she could not maintain a source of income to provide housing, transportation, or work on budgeting.
>
> 6. [Mother] has demonstrated a pattern of not completing services she was ordered to participate in, including attending not

participating consistently in home-based services meant to address employment, housing, budgeting, parenting, and housing and transportation. She did submit to random drug screens when she could be located, but consistently tested positive for substances she had no prescription for and for all types of illegal drugs. She completed an evaluation at Park Center, initiated services with Park Center, but was discharged from Park Center for failing to attend and complete services meant for substance abuse recovery and for treatment of Post Traumatic Stress Disorder.

7. [Mother] has demonstrated a pattern of an inability to adequately parent her children. [Mother] admitted that she has struggled with mental health since she was diagnosed with Post Traumatic Stress Disorder and could no longer afford the medication for its treatment and has no future plan for how to parent [Daughter] except to say that she will do what she has to.

8. There is a reasonable probability that because of [Mother]'s inability to adequately meet the basic needs of her children and her pattern of not completing services she was ordered to participate in, that the conditions that resulted in the child's removal from the home have not been and will not be remedied.

9. There is a reasonable probability that because of [Mother]'s struggle with mental illness and substance abuse that the reasons for the child's placement outside of the home will not be remedied.

10. [Father] has demonstrated an inability to adequately meet the basic needs of his children for food, clothing, and shelter for one and one half years. He has not had housing suitable for the child during that time, has been underemployed, and has been incarcerated for approximately one-third of the child in need of

services case. He has consistently tested positive for substances he has no prescription for and also for illegal substances.

11. [Father] has demonstrated a pattern of not completing services he was ordered to participate in. He participated in visitation and home-based services at times when he was not incarcerated during the case. He did complete two assessments at Park Center for substance abuse treatment. It was recommended that he complete treatment. He did not complete treatment, so the second assessment was necessary for him to be accepted into Park Center again.

12. There is a reasonable probability that because of [Father]'s inability to adequately meet the basic needs of his child and his pattern of not completing services he was ordered to participate in, that the conditions that resulted in the child's removal from the home have not been and will not be remedied.

13. There is a reasonable probability that because of [Father]'s struggle with substance dependency that the reasons for the child's placement outside of the home will not be remedied.

14. Termination of the parent-child relationship is in the best interest of the child.

15. [Daughter] has been adjudicated [a] child[] in need of services, has a current need for placement, has been in placement for over fifteen months of the last twenty-two months, and the she has not been reunified with either her mother or father.

16. There is a satisfactory plan for the care and treatment of the child. She is in a proposed adoptive home in licensed foster care.

Appellant's App. pp. 45-46. Mother and Father now appeal.

# Termination of Parental Rights

The purpose of terminating parental rights is not to punish parents but instead to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for their termination when the parties are unable or unwilling to meet their responsibilities as parents. *Id.* Indeed, parental interests must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009).

Indiana Code section 31-35-2-4(b)(2) provides that a petition to terminate parental rights must allege:

> (B)    that one (1) of the following is true:
>
> > (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii)   There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C)    that termination is in the best interests of the child; and

> (D)    that there is a satisfactory plan for the care and treatment of the child.

[13]    DCS must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *G.Y.*, 904 N.E.2d at 1261. Because Section 4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong of subsection (b)(2)(B) has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.3d 212, 220 (Ind. Ct. App. 2010).

[14]    Clear and convincing evidence need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the parent's custody. *Id*. If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[15]    We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id*. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id*. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id*. Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *J.M. v. Marion*

*Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

### I. Conditions Resulting in Child's Removal

[16] Mother and Father attack the sufficiency of the evidence supporting the trial court's decision to terminate their parental rights. First, they claim that the trial court erred in determining that there was a reasonable probability that the conditions which led to Daughter's removal from the Parents would not be remedied.

[17] When deciding whether there is a reasonable probability that the conditions resulting in a child's removal or continued placement outside of a parent's care will not be remedied, the trial court must determine a parent's fitness to care for the child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156-57 (Ind. Ct. App. 2013). However, the trial court may disregard efforts made only shortly before termination and weigh more heavily a parent's history of conduct prior to those efforts. *In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013).

[18] Both Parents' argument on this issue consists of attacking several of the conclusions set forth in the trial court's termination order. When the trial court

enters findings of fact and conclusions thereon,[3] we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *In re D.B.*, 942 N.E.2d at 871.

[19] Mother first attacks the trial court's conclusion that she "ha[d] been incarcerated for portions of the case." Appellant's App. p. 45. Mother argues that the trial court made no finding that she was incarcerated for a portion of the case and instead found only that she was convicted and sentenced to one year on probation and placed on home detention monitoring for 180 days. Mother, however, does not deny that she was arrested and charged with the crime of dealing in a look-alike substance. Indeed, she testified at the hearing that she spent four days in jail because of this charge. Tr. p. 44.

[20] To the extent that Mother's argument is that the trial court never made a specific "finding" regarding her stay in jail, this is not dispositive. If a trial court mischaracterizes a factual finding as a conclusion, or vice versa, we look past such labels to the substance of the trial court's judgment. *Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind. 2005). Here, the trial court made a factual statement regarding Mother's incarceration, and this statement is supported by evidence

---

[3] *See* Ind. Code § 31-35-2-8(c) (amended effective July 1, 2012 to require the court to enter findings of fact when terminating parental rights or dismissing a petition to terminate parental rights).

in the record. Accordingly, we find no error in the trial court's determination that Mother was incarcerated for a portion of the case.

[21] Mother next argues that the trial court wrongly concluded that she "could not maintain a source of income to provide housing, transportation, or work on budgeting," Appellant's App. p. 45, because she was employed at the time of the termination hearing. However, at the hearing, Mother testified that she had been employed only sporadically. Specifically, she testified that she worked at Pretzel's in January and February of 2015, then worked for "a couple of days" at CBS before quitting because she "wasn't comfortable with the job or the people." Tr. pp. 35-36. At the time of the December 29, 2015 termination hearing, Mother had been employed at Inventure since the end of November of that year. Given Mother's sporadic employment history, we cannot say that the trial court clearly erred in concluding that Mother had been unable to maintain a source of income.[4]

[22] Mother next attacks the trial court's conclusion 6, quoted above, that she failed to complete services and tested positive for drug use. She claims that had "good attendance" in her group therapy sessions and had negative drug screens during the spring and early summer of 2015 and again immediately before the

---

[4] Mother also complains that the trial court erred in concluding that she had no source of income to provide for housing. Mother notes that she had been living with her grandfather rent-free. However, this lasted only six months. Tr. p. 35. Mother testified that she and Father had moved in with Father's father only a week before the termination hearing. None of this contradicts the trial court's conclusion that Mother herself had insufficient income to afford housing.

termination hearing. However, the trial court was well within its discretion to disregard any improvements Mother made immediately before the termination hearing and instead weigh more heavily her history of conduct. *In re K.T.K.*, 989 N.E.2d at 1234. Moreover, Mother does not actually claim that any part of conclusion 6 is factually incorrect. The evidence before the trial court clearly supported the trial court's conclusion that Mother had a pattern of not completing the ordered services, consistently tested positive for drug use, and failed to complete the services intended to treat her substance abuse and mental health issues.

[23] Mother next attacks the trial court's conclusion 7, in which the court determined that Mother had "demonstrated a pattern of an inability to adequately parent her children," struggled with mental health issues, and had no future plan to parent Daughter. Mother's entire argument on this matter consists of the following: "However, Mother had been consistent in her parenting time with the R.N. throughout the CHINS case. Mother had been participating in reunification services and was benefiting from them." This bald assertion of error falls short of making a cogent appellate argument. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring appellate arguments to be supported by cogent reasoning); *Sumbry v. Pera*, 795 N.E.2d 470, 473 (Ind. Ct. App. 2003) (noting that arguments not supported by cogent reasoning are waived).

[24] Furthermore, we note that ample evidence was before the trial court that Mother demonstrated an inability to address her substance abuse issues. She was arrested for dealing just two months before the termination hearing, and

she tested positive for oxycodone the week prior to the termination hearing. Clearly, Mother was not benefitting from the services of which she did take advantage. It is true that the trial court found, at the May 28, 2015 review hearing, that Mother had been participating in and benefitting from reunification services. However, this fact alone does not negate the other serious, unresolved substance abuse issues Mother still had that demonstrated her inability to adequately parent her daughter. Mother also does not deny that there was evidence before the court that she suffered from post-traumatic stress disorder. Thus, we cannot say that the trial court's conclusions regarding Mother's mental health and substance abuse is clearly erroneous.

[25] Father also attacks the trial court's conclusions, specifically conclusions 10 and 11 quoted above, regarding his inability to meet Daughter's basic needs, his substance abuse, his employment, and failure to complete services. Father claims that he has been employed throughout the CHINS case, except for when he was incarcerated, and worked for several employers. However, the trial court did not state that Father had been unemployed; it found that Father had been incarcerated for almost one-third of the CHINS case and was *under*employed when he was not incarcerated. This, combined with Father's continued abuse of drugs, supports the trial court's conclusion that Father had demonstrated an inability to meet Daughter's basic needs. Nor are we persuaded that Father had adequate housing simply because he was living with Mother's grandfather or his own father. In short, Father had not completed the ordered services,

continued to test positive for drug use, did not have stable housing, and was either incarcerated or underemployed when not incarcerated.

[26] The condition which led to Daughter's removal was the Parents' drug use. During the CHINS case, neither parent successfully completed substance abuse treatment, both parents repeatedly missed drug screens or tested positive for drug use, and Mother was twice convicted for drug offenses. Clearly, both parents have continuing substance abuse issues that have hampered their ability to adequately parent their daughter. Considering only the evidence that favors the trial court's termination order, we conclude that there was sufficient evidence to support the trial court's conclusion that there was a reasonable probability that the conditions which led to Daughter's removal from the Parent's care would not be remedied. *See In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014) (concluding that evidence supported trial court's finding that the conditions that led to children's removal, specifically parents' substance abuse, would not be remedied, where mother's substance abuse worsened, mother failed to participate in substance abuse treatment, and father abused drugs when the children were placed with him and failed to complete substance abuse treatment), *trans. denied*.

## II. The Best Interests of the Child

[27] We also reject the Parents' argument that the evidence was insufficient to support the trial court's conclusion that termination of the parent-child relationship was in Daughter's best interest. In determining what is in the best interests of the child, the trial court must look beyond the factors identified by

DCS and look to the totality of the evidence. *A.D.S.*, 987 N.E.2d at 1158. The trial court must subordinate the interests of the parent to those of the child, and the court need not wait until the child are irreversibly harmed before terminating the parent-child relationship. *Id.* Moreover, the recommendation by the case manager or child advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

[28]     Here, the GAL testified that, based on her twenty years of experience, it was her opinion that termination of the parent-child relationship was in Daughter's best interests. The GAL's testimony on why she believed this adequately summarizes this case:

> In this situation, the parents haven't stopped abusing substances. We have 30 dirty drug screens through November that I'm aware without looking through the pile of drug screens that have been submitted into evidence. [Father] hasn't even done substance abuse treatment to try to deal with his substance abuse issue and there are numerous different drugs that he has tested positive for. [Mother] has at least tried. She was working on the issue but unfortunately she started using again at the end of when she was finishing her group treatment and continued using through November we had some positive drug screens and now we have another one from just last week with [Mother]. The substance use and abuse with both of the parents is pervasive and its affecting every aspect of their lives which ultimately affects the way that they could maintain any kind of stability or try to possibly parent a child especially a toddler child who rel[ie]s on parents for everything still at this point and time.

They are very young. They haven't been able to maintain any kind of employment history. [Mother] even testified that she hasn't been able to maintain a job for more than a month. I think with [Father] it was a couple of months that he maintained a job. They've been living off of other people in friends['] and relatives['] homes so they don't they have any means of transportation. They have no way to provide for themselves and care for themselves let alone care for their child. Without jobs, without stable income, without stable housing, without any kind of transportation, without having driver's license and having lots of bills for [Father] to be able to even get a driver's license, they don't have any way to properly care for themselves, let alone this child whose every need depends on a parent and that's not even addressing the real issue that got us here which is the substance abuse.

They have not been able to adequately deal with the fact that they have real substance abuse problems. They're not short term problems; they're long term problems and again the myriad of substances that they test positive for it's not just prescription drugs, its illegal substances. There's been cocaine and methamphetamines and heroin. Several of the drug tests have morphine, they have heroin in a couple of the drug tests too, the metabolite from heroin, but morphine is a metabolite for heroin. There are prescription drugs that at times one or the other has tested positive for so we haven't been able to remedy anything that got us involved in this case to begin with.

They are no close[r] to getting housing or maintaining a job than they were when this child was removed. They have to start substance abuse treatment. [Father] hasn't even done it. [Mother] truthfully has to start almost back at the beginning because she's been using since July of this year and she was finishing up her treatment in July and August of this year. There's been no benefit from the services. They can't talk about a reasonable plan or

work on budgeting or housing because they haven't even been able to maintain stable employment so we don't have an option.

This child has been removed from her parents' care for 20 months and in a week, it will be 21 months that she will have been removed. Friday this child turns 3. At that point and time, she will have been removed 21 out of 36 months of her life. So she has spent more of her life in licensed foster care, a short period of time in relative placement, than she has living in the home with either of her two parents and so it's time. We've given them ample opportunity because they were young, the Department gave them a longer opportunity to try and fix the problems and they just haven't been able to do it. As sad as it is, it's the best thing for this child. She needs to have stability. She needs to know where that stability is going to come from and her parents cannot provide that now and haven't been able to show in the last 20 months that they could provide it ever so that's where we are today. Its best for her to be able to move on and have a forever family and be adopted.

Tr. pp. 106-07 (paragraph breaks added). Given this testimony, we cannot say that the trial court erred in determining that termination of the parent-child relationship was in the best interests of Daughter.

## Conclusion

[29]     DCS presented sufficient evidence to support the trial court's conclusion that there was a reasonable probability that the reason for the child's removal from her parents — their use and abuse of drugs — would not be remedied. Instead, ample evidence suggested that the Parents still struggled with their substance abuse problems. The evidence was also sufficient to support the trial court's conclusion that termination of the parent-child relationship was in the best

interests of Daughter, who had been in foster care for over a year and a half, because the Parents still had not demonstrated that they could overcome their substance abuse problems and adequately provide for their child. Accordingly, we affirm the order of the trial court terminating Mother and Father's parental rights to their daughter.

[30] Affirmed.

Baker, J., and Pyle, J., concur.