

FILED

Jun 28 2016, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Brett E. Osborne
Hocker & Associates, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Matthew S. Schoettmer
Van Valer Law Firm, LLP
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey B. Morgan and Wendi S. Morgan, | June 28, 2016 |
| *Appellants-Plaintiffs/Counter-defendants*, | Court of Appeals Case No. 41A05-1512-PL-2267 |
| | Appeal from the Johnson Superior Court |
| v. | The Honorable Kevin M. Barton, Judge |
| Andrew White and Holly White, | Trial Court Cause No. 41D01-1402-PL-21 |
| *Appellees-Defendants/Counter-claimants*. | |

**Brown, Judge.**

Jeffrey B. Morgan and Wendi S. Morgan (collectively, the "Morgans") appeal the trial court's findings of fact, conclusions and judgment in favor of Andrew White and Holly White (collectively, the "Whites") on the Whites' counterclaim for adverse possession and quiet title. The Morgans raise one issue which we revise and restate as whether the court's judgment is clearly erroneous. We affirm.

### Facts and Procedural History[1]

In 1983 or 1984, Michael Coram owned Lot Number 32 of Pleasant Creek Acres in Greenwood, Indiana ("Lot 32"), and he built a home thereon. Almost immediately after completing the home, Coram erected a chain link fence to enclose the backyard of Lot 32. Soon thereafter, the neighbor who owned a home on Lot Number 33 ("Lot 33"), which is adjacent to and south of Lot 32, also constructed a chain link fence. The neighbor requested that he be allowed

---

[1] The Morgans did not request that a transcript of the hearing be prepared in their notice of appeal, and a transcript was not prepared or submitted on appeal. Also, the Appellants' Appendix consists of the following documents: the chronological case summary, the Morgans' complaint, the Whites' counterclaim and third party complaint to quiet title, the court's order denying the Whites' motion for summary judgment, and the court's findings of fact, conclusions of law and judgment. The facts discussed in the parties' briefs and recited in this opinion are based upon the court's order.

We observe that Indiana courts have addressed instances in which an appellant does not submit a transcript from trial proceedings in which the trial court enters findings, noting that although "the 'failure to include a transcript works a waiver of any specifications of error which depend upon the evidence,'" such failure is not fatal to an appellant's appeal. *Herr v. Carter Lumber, Inc.*, 888 N.E.2d 853, 854 (Ind. Ct. App. 2008) (quoting *In re Walker*, 665 N.E.2d 586, 588 (Ind. 1996) (quoting *Campbell v. Criterion Grp.*, 605 N.E.2d 150, 160 (Ind. 1992))), *trans. denied*; *see also Pabey v. Pastrick*, 816 N.E.2d 1138, 1141-1142 (Ind. 2004) (noting that the appellant "argued that no transcript was necessary because he did not contend that the trial court's findings of fact were unsupported by the evidence; in fact, he repeatedly cited the trial court's findings of fact and did not reference facts outside those found by the trial court," and holding that "the appellant's failure to submit a transcript was not a basis for dismissing the appellant's appeal"), *reh'g denied*.

to connect his fence to Coram's fence. The neighbor paid Coram toward the cost of the existing fencing and constructed the fence around the backyard of Lot 33, connecting it with the southern portion of the fence that Coram erected around the backyard of Lot 32.

[3] In 1998, the Whites purchased Lot 33 and received a survey location report at the closing. Based upon this survey location report, the Whites believed that the property line between Lot 33 and Lot 32 was the chain link fence line. Based upon this belief, the Whites have always cared for all of the property located south of the chain link fence, as well as the property south of a line obtained if the chain link fence was extended to the street. The Whites have paid property taxes on Lot 33 since 1998 by making escrow payments to their mortgagee's servicing agent.

[4] Sometime about the year 2000, after the Whites had purchased Lot 33, the then-owner of Lot 32, known as "Blackie," desired to install a privacy fence, asked the Whites if they wanted to take down the section of the chain link fence they shared and replace it with a privacy fence, and the Whites declined. Appellants' Appendix at 27. Blackie removed the chain link fence with the exception of the southerly portion of the fence that ran between Lot 33 and Lot 32 and installed a privacy fence around the backyard of Lot 32, which was north of the chain link fence.

[5] In 2003, the Morgans closed on their purchase of Lot 32 and the home situated thereon. Prior to closing, the Morgans believed that the Whites owned the

chain link fence and that it was located on the Whites' property, but after closing and reviewing a survey location report they had received, they believed that, while the Whites owned the chain link fence, that fence was located on Lot 32.

[6] In April of 2003, Jeffrey Morgan had a conversation with Andrew White regarding the Morgans' belief that the chain link fence encroached onto their property, i.e., Lot 32. In the conversation, Jeffrey Morgan asserted that the chain link fence was on the Morgans' property, and Andrew White responded "that he was not going to voluntarily change the location of the fence." *Id.* at 37.

[7] During the period that the Morgans have lived at Lot 32, they have maintained the property to the north of the chain link fence, and the Whites have maintained the property to the south of the chain link fence. In 2009, the Morgans planted eight or nine juniper bushes in the front yard of Lot 32 at the south end of Lot 32 and north of a line that would extend from the chain link fence to the street. In August of 2013, Andrew White trimmed the bushes because he believed the branches were across the property line, they would scratch his wife as she mowed the grass, and they were killing grass on his property as determined from the chain link fence line.

[8] On February 13, 2014, the Morgans filed a complaint (the "Complaint") alleging Count I, trespass to land related to Andrew trimming the juniper bushes; and Count II, complaint to compel removal of fence. On April 8, 2014,

the Whites filed their Counterclaim and Third-Party Complaint to Quiet Title to Real Estate (the "Counterclaim") alleging Count I, adverse possession and quiet title; Count II, title by acquiescence and quiet title; and Count III, slander of title. On July 8, 2015, the court denied a motion for summary judgment filed by the Whites.

[9] On August 26, 2015, the court held a trial on the Complaint and Counterclaim, and on November 23, 2015, pursuant to a motion by the Morgans, it entered its findings of fact, conclusions and judgment (the "Order") containing detailed findings and conclusions and ruling in favor of the Whites on the Morgans' two-count complaint, in favor of the Whites on their count alleging adverse possession and quiet title, and in favor of the Morgans on the Whites' other counts. The Order contained findings consistent with the foregoing and specifically noted that neither party introduced evidence of a staked survey to establish the property line and that, instead, the court admitted a survey location report for the limited purpose of state of mind of the Whites regarding their belief as to the property line. Under the heading "**CONCLUSIONS**," the Order stated the following in part:

> 2. A significant aspect of the case is that neither side presented evidence as to the location of the property line. Each side testified to their opinion of where the property line was based upon a survey location report that each side received at the time that the respective properties were purchased. As the Court noted in its Order on summary judgment, a survey location report does not have the same precision as a staked survey. As the Court also noted in it's [sic] Order on summary judgment, the lack of precision is set forth in the disclaimer in the survey. Even

assuming that the parties properly developed their good faith belief upon the survey location reports received at closing, no evidence explained the apparent contradiction within the reports.

* * * * *

16. The Court turns to the Counterclaim and Third Party Complaint. The White's first cause of action is pled in adverse possession and quiet title.

17. The Court begins by noting that the Whites did not introduce evidence as to the true property line.  The Whites believed that they owed [sic] up to the fence line based upon the survey location report.  However, notwithstanding their belief that title to the property is established by deed, the Whites assert that the property has been acquired by adverse possession.  No survey was introduced into evidence.  A legal description was not provided as to the property subject to acquisition by adverse possession.  The Court will consider the adverse possession claim on the assumption that the true property line is not the fence line, and that an unknown quantity of property is subject to claim under adverse possession.  The Court will consider [sic] then consider the quiet title action.  Issues pertaining to the ownership and description of property will be considered in the quiet title action.

* * * * *

27. The Morgans held the opinion that the property line was approximately one to two feet south of the chain link fence line. The Whites held the opinion that the chain link fence line was the property line.

*Id.* at 32, 34-35, 37. The court then engaged in a thoughtful examination of the elements of adverse possession and concluded that "the Whites have acquired title to the fence line by adverse possession." *Id.* at 46. It also concluded regarding the Whites' action for quiet title that "although the Whites did not introduce evidence of a survey or provide a legal description of the property, [they] did identify monumentation, i.e. the existing fence line, so as to permit the line to be established with a surveyor," and it quieted title to the disputed parcel in the Whites. *Id.* at 50. In effecting its decision, the court ordered the Whites to "obtain at their expense a staked survey of the existing chain link fence line and a legal description and file same" and that the parties execute reciprocal quitclaim deeds confirming title utilizing the chain link fence line as the property boundary between Lot 32 and Lot 33. *Id.* at 51.

## *Discussion*

The issue is whether the court's judgment is clearly erroneous. When a trial court enters findings of fact and conclusions thereon, findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.* When a court has made special findings of fact, an appellate court reviews sufficiency of the evidence using a two-step process. *Id.* First, it must determine whether the evidence supports the trial court's findings of fact, and second it must determine whether those findings of fact support the trial court's conclusions. *Id.*

Findings will only be set aside if they are clearly erroneous. *Id.* Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.* We review questions of law *de novo* and owe no deference to the trial court's legal conclusions. *M.K. Plastics Corp. v. Rossi*, 838 N.E.2d 1068, 1075 (Ind. Ct. App. 2005).

[11] The Morgans observe that, as the trial court repeatedly noted, "no evidence was submitted regarding a true, actual or legal description of the property or property lines in dispute…none." Appellants' Brief at 4. They argue, without citation to authority, that "[i]t makes reasonable, logical and unassailable sense that implicit in each of the adverse possession elements is that the party seeking to take the property via adverse possession must establish, **by evidence**, a proper legal description of the property in dispute." *Id.* The Morgans also argue that an apparent incongruity exists in which, while the court ruled that it could not find for the Morgans by a preponderance of the evidence on their trespass claim due to the lack of a staked survey, it found for the Whites on their adverse possession and quiet title claim which is judged under a more stringent clear and convincing evidence standard.

[12] The Whites initially suggest that, because the Morgans did not request a transcript, they have waived their issue on appeal, which they argue is

evidentiary in nature. The Whites argue that "[t]he Morgans do not appear to challenge the Trial Court's findings or conclusions regarding the specific elements of adverse possession, except as they pertain to the identification and description of the disputed tract of land." Appellees' Brief at 8. They assert that in an action for quiet title it is sufficient if the claim includes "a description of the premises," *id.* at 9 (quoting Ind. Code § 32-30-2-4(1)), in which "[a] description of real estate is sufficient when the sheriff, with the aid of a surveyor, can find the real estate and determine its boundaries." *Id.* (quoting *Gilbert v. Lusk*, 106 N.E.2d 404, 410 (Ind. Ct. App. 1952) (en banc)). The Whites also note that the chronological case summary reflects that a surveyor did in fact establish the property line in accordance with the Order on December 18, 2015.

[13] First, to the extent that the Whites argue that the Morgans have waived their issue on appeal, we observe that there is no dispute that neither side submitted evidence establishing the exact property line between Lot 32 and Lot 33. The Morgans' argument is whether the court could find adverse possession where the exact borders were not entered into evidence.

[14] At common law, the "elements of adverse possession required the claimant to prove the possession was (1) actual; (2) visible; (3) open and notorious; (4) exclusive; (5) under claim of ownership; (6) hostile; and (7) continuous for a statutory period of time." *Altevogt v. Brand*, 963 N.E.2d 1146, 1151 (Ind. Ct. App. 2012) (quoting *Roberts v. Feitz*, 933 N.E.2d 466, 478 (Ind. Ct. App. 2010) (citing *Fraley v. Minger*, 829 N.E.2d 476, 485 (Ind. 2005))). In *Fraley*, however,

the Indiana Supreme Court rephrased the elements of adverse possession, stating that "the doctrine of adverse possession entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration." *Id.* (citing *Fraley*, 829 N.E.2d at 486). These elements were defined in *Fraley* as follows:

> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
>
> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");
>
> (3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and
>
> (4) Duration—The claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Id.* at 1151-1152 (quoting *Fraley*, 829 N.E.2d at 486).[2] These elements must be satisfied for the statutory period of ten years. *Id.* at 1152 (citing *Hoose v. Doody*,

---

[2] As observed by this court in *Altevogt*:

886 N.E.2d 83, 92 (Ind. Ct. App. 2008) (citing Ind. Code § 34-11-2-11), *trans. denied*). "And they must be established by clear and convincing evidence." *Id.* (citing *Fraley*, 829 N.E.2d at 483). The failure to establish any one element of an adverse possession claim defeats the claim. *Id.* (citing *Daisy Farm Ltd. P'ship v. Morrolf*, 915 N.E.2d 480, 487 (Ind. Ct. App. 2009)). Additionally, the claimant must have a reasonable and good faith belief that they and their predecessors in interest have paid all taxes due on the disputed real estate in accordance with Ind. Code § 32-21-7-1. *See Celebration Worship Ctr., Inc. v. Tucker*, 35 N.E.3d 251, 255 (Ind. 2015) (noting that "the homeowners in the present case argue that they and their predecessor have paid all taxes they reasonably believed in good faith to be due on the disputed real estate" which "substantially complie[d] with the statutory tax payment requirement").

[15] The court's Order considered the Whites' claim for adverse possession "on the assumption that the true property line is not the fence line, and that an unknown quantity of property is subject to claim under adverse possession." Appellants' Appendix at 35. The crux of the Morgans' position is that it was

---

The *Fraley* court identified the elements of adverse possession to reflect a "simplified articulation" of the "essence of the common law doctrine." 829 N.E.2d at 486. But we have since recognized that this "'reformulation does not appear to affect the vitality of prior case law.'" *Garriott v. Peters*, 878 N.E.2d 431, 438 n.6 (Ind. Ct. App. 2007), *trans. denied* (quoting *Chickamauga Props., Inc. v. Barnard*, 853 N.E.2d 148, 153 n.11 (Ind. Ct. App. 2006)[, *reh'g denied*]).

963 N.E.2d at 1152 n.9.

clearly erroneous for the court to render its ruling under such an assumption. We disagree.

[16] For the purposes of the Whites' Counterclaim, evidence was presented demonstrating that ownership of a certain strip of land between Lot 32 and Lot 33 was contested. The Whites claimed ownership of property extending to the chain link fence line separating the parcels, while the Morgans asserted that they owned property a few feet south of this fence line. The court was able to apply the factors articulated in *Fraley* to evaluate the Whites' adverse possession claim and conclude that the Whites satisfied each of the elements regarding property up to the fence line. Indeed, the Morgans do not dispute the court's findings of fact and conclusions regarding each of these elements. The Morgans suggest that, without evidence of the true property line, "it is impossible to determine if the fence actually separates the properties or is on one property or the other." Appellants' Brief at 4. However, recognizing that the Whites satisfied the elements for adverse possession, there are only two possibilities for who owns the strip of property in question: either the Whites own some or all of the disputed property legally or they own it pursuant to the doctrine of adverse possession.

[17] Whereas a claim for trespass requires establishing that the plaintiff owns the land in question, *see Reed v. Reid*, 980 N.E.2d 277, 295 (Ind. 2012) ("To make out a cause of action for trespass . . . the [plaintiff] must prove that it owns the land in question and that the [defendants'] entry upon it was unauthorized." (quoting *Calumet Nat'l Bank. Tr. v. Am. Tel. & Telegraph Co.*, 682 N.E.2d 785, 788

(Ind. 1997) (citing *State ex rel. McPherson v. Beckner*, 132 Ind. 371, 31 N.E. 950, 951 (1892)))), causes of action for adverse possession are grounded not in the holding of legal title to land, but rather require evidence regarding the *use* and *treatment* of a parcel of land in a manner satisfying the doctrine's elements of control, intent, notice, and duration. The Morgans do not dispute that the Whites satisfied these elements, as well as the statutory tax payment requirement of Ind. Code § 32-21-7-1, at trial. To the extent that an action for quiet title requires that the complaint contain "a description of the premises," Ind. Code § 32-30-2-4(1), such "is sufficient when the sheriff, with the aid of a surveyor, can find the real estate and determine its boundaries." *Gilbert*, 123 Ind. App. at 178, 106 N.E.2d at 410. We agree with the trial court that the location of the existing chain link fence line is sufficient to demarcate the property line between Lot 32 and Lot 33. *See Brown v. Anderson*, 90 Ind. 93, 95-96 (1883) (noting that the description of the land was sufficient in which "[t]he place of beginning of the strip of ground in question is at a point fifteen rods and twenty links north of the south line of [section 19, township 2, range 3 west in Switzerland County] and at the center of a fence running north and south on the line between the lands of the appellee and the appellant, which fence had stood as such line for forty years"); *cf. Taflinger Farm v. Uhl*, 815 N.E.2d 1015, 1017-1019 (Ind. Ct. App. 2004) (noting that the evidence of the disputed property boundary consisted of testimony at trial describing it "as a 'kind of rough old farm' with a fence," in which it was not apparent that the fence line was the asserted boundary line, was "inadequate to provide 'sufficient means to identify a definite and specific tract'") (citing *Gilbert*, 123 Ind. App. at 178, 106

N.E.2d at 410). We cannot say that the court's judgment in its Order is clearly erroneous.

## *Conclusion*

For the foregoing reasons, we affirm the court's Order.

Affirmed.

Baker, J., and May, J., concur.